UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No. 09-60318-CIV-ALTONAGA/Brown

TOYOTA TSUSHO AMERICA, INC.,

       Plaintiff,

vs.

NSC ALLIANCE LLC f/k/a NSC
ALLIANCE CORPORATION, LLC,
*et al.*,

       Defendants.

_____/

**ORDER**

**THIS CAUSE** came before the Court upon Defendant, Marilyn Fernandez's Motion to Dismiss [D.E. 116], filed December 23, 2009; and Defendant, NSC Alliance LLC's Motion to Dismiss [D.E. 118], filed January 7, 2010.  The Court has considered the parties' written submissions and the applicable law.

**I. BACKGROUND**

Plaintiff, Toyota Tsusho America, Inc. ("Toyota Tsusho"), sued Defendants, Marilyn Fernandez ("Fernandez") and NSC Alliance LLC ("NSC"), among others, for torts arising from a scheme to defraud Toyota Tsusho in the distribution of Toyota automotive parts.

Toyota Tsusho employed Defendant, Henry Herazo ("Herazo"), as a sales representative from March 24, 2003 to April 17, 2008.  (*See* Compl. [D.E. 1] ¶¶ 28, 38).  Herazo is Fernandez's son. (*See id.* ¶ 46).  As part of his duties with Toyota Tsusho, Herazo knew substantial amounts of confidential information, including (1) the identity of Toyota Tsusho's Suppliers, (2) the prices and terms on which Toyota Tsusho paid for parts, (3) the identity of Toyota Distributors, (4) the products

Case No. 09-60318-CIV-ALTONAGA/Brown

Toyota Distributors purchased from Toyota Tsusho, and (5) the prices Toyota Distributors paid for Toyota parts (collectively the "Confidential Information"). (*See id.* ¶ 47). In August 2005, while Herazo was employed by Toyota Tsusho, Fernandez formed NSC. (*See id.* ¶ 46). NSC and Herazo, who is an officer of NSC, then embarked on two schemes to defraud Toyota Tsusho. (*See id.* ¶¶ 46, 48).

In the first scheme, Herazo introduced NSC to Toyota Tsusho without disclosing his relationship with NSC, fraudulently causing Toyota Tsusho to accept NSC as a customer. (*See id.* ¶ 48). In furtherance of the first scheme, Herazo approved the credit terms on which Toyota Tsusho sold Toyota parts to NSC. (*See id.*). NSC then purchased Toyota parts from Toyota Tsusho and resold those parts, at a mark-up, to Toyota Distributors. (*See id.*). The distribution chain looked like this:

1.      Toyota Suppliers → Toyota Tsusho → NSC → Toyota Distributors

(*See id.*). NSC caused Toyota Tsusho to violate the exclusivity provisions of its agreements with Toyota Distributors. (*See id.*).

In the second scheme, NSC purchased Toyota parts from Toyota Tsusho's Suppliers and resold the parts to Toyota Distributors. (*See id.* ¶ 49). Throughout the second scheme, NSC falsely and fraudulently claimed it was authorized to act on behalf of Toyota Tsusho. (*See id.*). The distribution chain for the second scheme looked like this:

2.      Toyota Suppliers → NSC → Toyota Distributors

(*See id.*). The second NSC scheme is described in more detail below.

In November 2006, Herazo exchanged emails with a Venezuelan Toyota Distributor concerning the sale of Toyota parts. (*See id.* ¶ 65). Herazo referred the distributor to Fernandez at

2

NSC, who followed up with the distributor and falsely asserted that NSC would process the distributor's order to Toyota Tsusho. (*See id.*). The fraudulent sales were in excess of $100,000. (*See id.*).

In addition, from April 2007 through May 2008, NSC sold approximately $4.1 million in Toyota parts to Autonica, S.A. ("Autonica") in Nicaragua. (*See id.* ¶¶ 61, 63). In making these sales, NSC falsely and fraudulently represented that it was a subsidiary of Toyota Tsusho. (*See id.* ¶ 61). For example, on April 21, 2008, Autonica emailed Herazo at his Toyota Tsusho address to inquire about automotive batteries. (*See id.* ¶ 62). Herazo responded and copied Fernandez at her NSC email address. (*See id.*). Fernandez later provided Autonica with pricing information, claiming that a Chinese manufacturer would have lower prices. (*See id.*). Some time thereafter, Herazo told Autonica that he was about to quit working at Toyota Tsusho, but that as a manager of NSC he would provide parts sold by Toyota Tsusho and would report monthly to Toyota Tsusho about NSC's activities. (*See id.*). NSC continued to make numerous sales to Autonica. (*See id.* ¶ 63). The loss of these sales damaged Toyota Tsusho, as Autonica was contractually obligated to purchase parts from Toyota Tsusho. (*See id.* ¶ 64).

Similarly, on April 27, 2008, Herazo emailed an independent Colombian distributor from his Toyota Tsusho account and copied Fernandez. (*See id.* ¶ 51). The email, which falsely represented that NSC was a subsidiary of Toyota Tsusho, stated:

> I would like to inform you that starting January of this present year, Toyota Tsusho acquired the distribution rights of NSC. In such manner, the name of the entity changed to NSC Alliance since the company changed from an independent corporation to a Toyota Tsusho subsidiary, and leally in the US, the name of "Corporation" can not be used under the new structure. . . .

(*See id.*).

Case No. 09-60318-CIV-ALTONAGA/Brown

Herazo, acting on behalf of NSC, also falsely and fraudulently represented to Denso Sales California, Inc. ("Denso"), one of Toyota Tsusho's Suppliers, that NSC was authorized to purchase Toyota parts on behalf of Toyota Tsusho. (*See id.* ¶ 53). Herazo affixed a copy of the actual signature of Akirma Kimura, a Vice President of Toyota Tsusho, to a document that stated NSC was an authorized subsidiary acting on behalf of Toyota Tsusho. (*See id.* ¶ 54). Herazo submitted the document to Denso with the intention that Denso rely on the document. (*See id.*). Herazo also altered an agreement with Denso to limit Toyota Tsusho's rights to sell parts purchased from Denso and to require Toyota Tsusho to sell parts to NSC. (*See id.*).

Then, in a May 22, 2008 email, another Toyota Tsusho employee asked Herazo, who no longer worked for Toyota Tsusho, for the list prices that Toyota Tsusho paid for parts from Denso. (*See id.* ¶ 57). Herazo passed the request to Fernandez, who had received the Confidential Information. (*See id.*). Several months thereafter, Fernandez sent an email to Denso, allegedly on behalf of a Colombian subsidiary, NSC Alliance Colombia, seeking to purchase spark plugs for a customer in Colombia. (*See id.* ¶ 58). NSC has continued to misrepresent its relationship with Toyota Tsusho on the NSC website. (*See id.* ¶ 60).

Based on the foregoing allegations, Toyota Tsusho alleges it conferred a benefit on Defendants, including NSC. (*See id.* ¶ 105). Defendants obtained Confidential Information from Toyota Tsusho, which they used at the expense of Toyota Tsusho by, among other things, making sales to Toyota Distributors and other customers as if they were Toyota Tsusho and taking advantage of Toyota Tsusho's relationships with its Suppliers to purchase automotive parts. (*See id.*). Defendants knew of, accepted, and retained those benefits under circumstances that make it inequitable for them to retain the benefits without compensating Toyota Tsusho. (*See id.* ¶ 106).

4

Case No. 09-60318-CIV-ALTONAGA/Brown

Toyota Tsusho also alleges that Defendants, including NSC, agreed to engage in unlawful acts that damaged Toyota Tsusho; that Defendants committed overt acts in furtherance of the conspiracy; and that as a result Toyota Tsusho has been financially damaged. (*See id.* ¶¶ 109–11).

Fernandez moves to dismiss all counts against her for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6): injunctive relief, tortious interference with a contractual relationship, tortious interference with an advantageous business relationship, unfair competition, conversion, unjust enrichment, and civil conspiracy. NSC moves to dismiss two of the claims against it for failure to state a claim under Rule 12(b)(6): unjust enrichment and civil conspiracy.

## II.  LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. —, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## III.  ANALYSIS

### A.      Fernandez's Motion to Dismiss

Fernandez's sole argument in her Motion to Dismiss is that she is protected by the corporate veil doctrine because she was acting on behalf of NSC.

In general, directors, officers, and stockholders "are not liable for corporate acts simply by reason of their official relation to the corporation." *See Munder v. Circle One Condominium, Inc.*, 596 So. 2d 144, 145 (Fla. 4th DCA 1992). A showing of improper conduct such as fraud or self-dealing is therefore necessary to pierce the corporate veil. *See Dania Jai-Alai Palace, Inc. v. Sykes*, 450 So. 2d 1114, 1121 (Fla. 1984). However, "officers or agents of corporations may be individually liable in tort if they commit or participate in a tort, even if their acts are within the course and scope

5

of their employment." *White v. Wal-Mart Stores, Inc.*, 918 So. 2d 357, 358 (Fla. 1st DCA 2005). Thus, although "[o]ne purpose of the corporate fiction is to insulate *stockholders* from liability for corporate acts[,] . . . *officers* of a corporation are no less personally responsible for their tortious acts by virtue of those acts having been performed in the corporate name." *Adams v. Brickell Townhouse, Inc.*, 388 So. 2d 1279, 1280 (Fla. 3d DCA 1980) (emphasis in original).

The corporate veil doctrine does not protect Fernandez. Toyota Tsusho has alleged Fernandez personally participated in the NSC schemes by accepting and using Toyota Tsusho's Confidential Information: she fraudulently answered customer emails, provided pricing information, and filled customer orders, as if NSC was a subsidiary of Toyota Tsusho. Fernandez may be held liable for her individual acts, even if she was acting as a manager of NSC. Fernandez's Motion to Dismiss is denied.

### B.    NSC's Motion to Dismiss

#### 1.    Unjust Enrichment — Count VII

NSC argues Toyota Tsusho fails to state a claim for unjust enrichment as to either the first or second NSC scheme.

"In Florida, '[t]he essential elements of a claim for unjust enrichment are: (1) a benefit conferred upon a defendant by the plaintiff, (2) the defendant's appreciation of the benefit, and (3) the defendant's acceptance and retention of the benefit under circumstances that make it inequitable for him to retain it without paying the value thereof.'" *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1274 (11th Cir. 2009) (quoting *Rollins, Inc. v. Butland*, 951 So. 2d 860, 876 (Fla. 2d DCA 2006)); *see also Fla. Power Corp. v. City of Winter Park*, 887 So. 2d 1237, 1241 n.4 (Fla. 2004). Toyota Tsusho has alleged NSC accepted the Confidential Information and, without Toyota Tsusho's

permission, used the Confidential Information (1) to make sales to Toyota Distributors and other customers as if it was Toyota Tsusho and (2) to take advantage of Toyota Tsusho's relationships with its Suppliers.  NSC inserted itself into Toyota Tsusho's supply chain to reap profits that otherwise would have gone to Toyota Tsusho.  These allegations state a claim for unjust enrichment.

But, NSC argues, Toyota Tsusho had no knowledge of the second scheme, so Toyota Tsusho could not have knowingly conferred a benefit on NSC in the second scheme.  The cases NSC cites, however, do not hold a plaintiff must *knowingly* confer a benefit.  (*See* NSC's Mot. to Dismiss at 3 (citing *United Techs. Corp v. Mazer*, 556 F.3d 1260 (11th Cir. 2009); *Hercules, Inc. v. Pages*, 814 F. Supp. 79 (M.D. Fla 1993))).  NSC, the moving party, has not met its burden on this argument. *See, e.g.*, *Zafar v. U.S. Att'y Gen.*, 426 F.3d 1330, 1336 (11th Cir. 2005) (rejecting equal protection argument where petitioners cited no supporting case law), *vacated on other grounds by* 461 F.3d 1357, 1367 (11th Cir. 2006); *see also* Local Rule 7.1.A.1. ("Every motion . . . shall include or be accompanied by a memorandum of law citing supporting authorities . . . .").

NSC also raises three arguments as to the first scheme.  First, it argues Toyota Tsusho knowingly sold parts to NSC and knowingly allowed NSC to resell those parts to others.[1]  (*See* NSC's Mot. to Dismiss at 4).  Second, relying on an affidavit, NSC argues Toyota Tsusho continued its relationship with NSC even after it learned about Herazo's role at NSC, which contradicts Toyota Tsusho's allegations.  (*See id.*).  And, third, NSC argues Toyota Tsusho failed to allege that NSC had a duty to disclose all interested members of NSC to Toyota Tsusho.  Two of the three additional

---

[1]  NSC's arguments appear to be inconsistent.  It first argues Toyota Tsusho fails to state a claim regarding the second scheme because it *did not* knowingly confer a benefit on NSC; then it argues Toyota Tsusho fails to state a claim regarding the first scheme because it *did* knowingly confer a benefit on NSC. For neither proposition, however, does NSC cite any authority.

arguments rely on matters outside the pleading and are therefore impermissible on a motion to dismiss under Rule 12(b)(6) without converting the motion to a motion for summary judgment. Furthermore, the Court declines to address these arguments because even if the first scheme does not state a claim for unjust enrichment, the second one does, as discussed above.

### 2.    Civil Conspiracy — Count VIII

NSC argues Toyota Tsusho fails to state a claim for civil conspiracy because Toyota Tsusho's conclusory allegations are not supported by facts and fail to inform NSC of the nature of the conspiracy.

To state a claim for civil conspiracy, a plaintiff must allege: "(a) an agreement between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts done under the conspiracy." *Charles v. Fla. Foreclosure Placement Ctr., LLC*, 988 So. 2d 1157, 1159–60 (Fla. 3d DCA 2008) (internal quotation marks omitted).

Count VIII incorporates the facts in paragraphs 1–73 of the Complaint.  (*See* Compl. ¶ 108). Specifically, Toyota Tsusho alleges NSC and others agreed to engage in unlawful acts that harmed Toyota Tsusho.  To support this allegation, Toyota Tsusho states, among other things: (1) Herazo stole Toyota Tsusho's Confidential Information and gave it to NSC and Fernandez; (2) NSC, through Fernandez, used the Confidential Information to sell products; (3) NSC, through Fernandez and Herazo, represented to Toyota Tsusho's customers and suppliers that it was a subsidiary of Toyota Tsusho; (4) Herazo, Fernandez, and others exchanged multiple emails in furtherance of these schemes; and (5) the two schemes constituted tortious interference, unfair competition, and conversion.  These facts, which are more than conclusory allegations, adequately inform NSC of the

8

Case No. 09-60318-CIV-ALTONAGA/Brown

nature of the alleged conspiracy, as Toyota Tsusho identifies which Defendants participated in the conspiracy and what each Defendant did in furtherance of the conspiracy.  Count VIII states a claim against NSC.

## IV.  CONCLUSION

Consistent with the foregoing analysis, it is

**ORDERED AND ADJUDGED** as follows:

1.  Fernandez's Motion **[D.E. 116]** is **DENIED**.

2.  NSC's Motion **[D.E. 118]** is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 11th day of February, 2010.

**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc:     counsel of record